**Davis Miles McGuire Gardner**

40 E. Rio Salado Pkwy., Suite 425
Tempe, AZ 85281
Telephone: (480) 733-6800
Fax: (480) 733-3748
efile.dockets@davismiles.com

Pernell W. McGuire – SBN 015909
M. Preston Gardner – SBN 029868
*Attorneys for Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ARP FAMILY FARMS, G.P.,<br><br>ARP CUSTOM FARMING, LLC,<br><br>                      Debtors. | In Chapter 11 Proceedings<br><br>Case No.: 2:18-bk-14173-DPC<br>Case No.: 2:18-bk-15464-DPC<br><br>(Jointly administered under<br>Case No.: 2:18-bk-14173-DPC) |
| This filing applies to:<br><br>  X  All Debtors<br><br>  __  Specified Debtors | **DEBTORS' MOTION TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364** |

Pursuant to 11 U.S.C. § 364, the debtors-in-possession, Arp Family Farms, GP, an Arizona general partnership ("Arp Family Farms"), and Arp Custom Farming, LLC, an Arizona limited liability company ("Arp Custom Farming") (collectively referred to as the "Debtors"), submit this motion requesting authority to obtain post-petition financing and the following proposed terms: (i) a secured loan from Farm Service Agency ("FSA") in the amount of $300,000.00, with the FSA to be granted a first-position lien in the Debtors' newly planted crops; and (ii) an unsecured loan from Science Tillage in the amount of

$105,000.00, with the debt owed to Science Tillage to be allowed as an administrative expense. This motion is supported by the accompanying Memorandum of Points and Authorities, the Declaration of Nathan Arp, and the entire record before the Court, which are incorporated herein by this reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

A.  Background

1. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this motion is 11 U.S.C. § 364.

2. On November 19, 2018, Arp Family Farms filed its voluntary Chapter 11 petition in the U.S. Bankruptcy Court for the District of Arizona, at Case No. 2:18-bk-14173-DPC.

3. On December 20, 2018, Arp Custom Farming filed its voluntary Chapter 11 petition in the U.S. Bankruptcy Court for the District of Arizona, at Case No. 2:18-bk-15464-BMW.

4. Nathan Arp is a member and manager of Ephesians 3:20 Farms, LLC and Proverbs 31 Farms, LLC, the general partners of Arp Family Farms. He is also a member and manager of Arp Custom Farming.

5. On January 7, 2019, the Court entered an order directing the joint administration of Arp Family Farms and Arp Custom Farming.

B. <u>Property of the Debtors</u>

6. Arp Family Farms is the owner of a leasehold interest in two parcels of property located in Eloy (1,700 total acres, of which 1,200 are farmable) and Maricopa (300 acres) Arizona, which are used to grow alfalfa (the "Farm"). Arp Custom Farms owns the equipment, inventory, and other personal property used to operate the Farm. Although the Debtors have farmed these properties for many years, they are not currently farming either property.

7. Upon information and belief, Great Western Bank ("GWB") may claim a lien on the Debtors' assets in the approximate amount of $13,000,000.

8. The crop currently growing on the Farm is 5th year alfalfa, but it has not been farmed for the past year. On January 10, 2019, Great Western Bank sent an inspector, Ross Fugleberg to assess the crops' condition and current value, and he determined that the crops were not worth anything. Nathan Arp agrees with this assessment because an alfalfa crop generally only lasts for around five years, and the yield in the 5th year typically drops to around 25% of first-year production. As a result, Mr. Arp asserts that the majority of farmers will plant new alfalfa crops in the 5th year. Given that this crop has not had water for the last year, it is worth $0.00.

9. The Debtors intend to plant new alfalfa on 1,500 total acres, but they cannot plant the new crops or otherwise operate their business without operating funds to fund administrative expenses and pay for ongoing operations. The proposed loans would be secured by an interest in the new, post-petition crop. As discussed in more detail below, pursuant to 11 U.S.C. § 552, the Debtors' post-petition crops would not be subject to any prepetition lien.

C.  The Debtors' Financing Needs and Proposed Post-Petition Financing

10. The Debtors do not have sufficient funds to meet their immediate post-petition liquidity needs. Although the Debtors intend to plant a new alfalfa crop, they need post-petition financing to continue operating. The Debtors' business depends on cash to pay for seed, fertilizer, fuel, water, land leases, and farm labor, among other essential expenses. The Debtors' initial proposed "budget" for the next 24 months is attached as **Exhibit "A"** to the Declaration of Nathan Arp in Support of Debtors' Motion to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364 (the "Arp Declaration") filed concurrently herewith.

11. To ensure the Debtors' business operations are not interrupted, and to ensure that these jointly administered Chapter 11 cases proceed optimally, the Debtors believe that obtaining post-petition financing is necessary and in the best interests of the Debtors and their estates. Without the ability to obtain post-petition financing, the

4

Debtors would cease operations permanently and could not reorganize to the detriment of all creditors.

12. The Debtors have received an offer from the Farm Services Administration ("FSA") for a $300,000 loan that will allow the Debtors to re-commence farming operations. The Debtors obtained approval of this loan prepetition. Since the petition date, the Debtors have received verbal confirmation from the loan officer that the FSA is still willing to fund this loan, even though Debtors filed bankruptcy, as long as they obtain Bankruptcy Court approval. The $300,000 loan will mature one year from the date of loan closing and interest will accrue at a rate of 3.625% per annum. In exchange for the loan, the FSA will be given a first-priority position lien on the Debtors' new, post-petition alfalfa crop and crop proceeds pursuant to 11 U.S.C. § 364(c)(2).

13. The FSA loan is essential to fund the Debtors' continued operations, including the preparation of fields and planting of new alfalfa crops. After obtaining the FSA loan, the Debtors expect to resume farming operations in March 2019 and will rely on the loan proceeds until the first cutting of the new alfalfa crop in November 2019. The Debtors will immediately hire farm labor to repair irrigation canals, pull weeds, and run borders around fields. The Debtors will also use the loan proceeds to pay for fuel, crop insurance, equipment repairs and maintenance, and other expenses. The total expenses in March 2019 will total $9,658.

14. Lease payments totaling $62,400 will be due to the Arizona State Land Department in May 2019. Although the payment was initially due in February 2019, the Debtors received written email confirmation from Chuck Vencill at the Arizona State Land Department informally approving an extension of the payment deadline to May 2019. The Debtors are awaiting formal documentation evidencing this extension.

15. In addition, property irrigation taxes of $25,000 are due to the Pinal County Assessor in July 2019. The Debtors will also pay around $40,000 per month for water from September through November 2019.

16. Starting in April 2019, the Debtors will begin preparing the soil before planting the new alfalfa crop. The Debtors intend to hire Science Tillage to complete the tillage work and estimate that this work will continue through June 2019.

17. The Debtors received a commitment letter dated January 16, 2019 from Scott Dastrup at Science Tillage, estimating the invoice for the tillage work at $105,000 and extending a loan to the Debtors. Under this loan arrangement, Science Tillage will perform the tillage work in April – June 2019 and invoice the work upon completion, but the Debtors are not required to pay the invoice until April 2020. The loan balance will accrue interest at the rate of 7% per annum. The unsecured debt to Science Tillage will be allowable under 11 U.S.C. § 503(b)(1) as an administrative expense, pursuant to § 364(a) or (b).

6

18. The Debtors intend to start planting the new alfalfa crop in August 2019. The required seed will cost around $102,000 in August 2019 and fertilizer will cost $26,250 per month in August and September 2019. The Debtors will need herbicide in November 2019 through January 2020 in the total amount of $15,000.

19. From March through November 2019, at which point the Debtors will begin receiving regular income from the periodic harvest of the new alfalfa crop, the Debtors estimate that their total expenses will be around $561,635. These expenses will be paid from the proceeds of the FSA loan of $300,000, the Science Tillage loan of $105,000, and an equity contribution of at least $100,000. The Debtors also expect to receive a total of $25,000 from Rural Community Insurance Company in May and August 2019 related to a PRF Rainfall policy.

20. The Debtors' income will increase significantly starting with the second cutting of the new alfalfa crop in February 2020. In contrast to the initial harvest in November 2019, which will yield between 0.5-0.75 tons per acre, the yield in February 2020 and subsequent harvests will be about 1.25 tons per acre. The Debtors expect to harvest alfalfa each month from March through October 2020 with a total value of around $2,741,850.

21. In his declaration, Mr. Arp avows that he has contacted no less than seven different loan brokers and private equity bankers since the petition date, and the FSA was the only lender willing to provide post-petition financing in exchange for a lien on the new

crop. No lender would provide post-petition financing in exchange for a lien that was junior to the first-position lien of Great Western Bank. At least one loan broker could not provide a proposal without the payment of an advance on fees.

22. The Debtors also contacted Fertizona, Farmers Business Network, and Crop Protection Services seeking a $200,000 line of credit. None of them were willing to provide any post-petition financing to the Debtors.

23. A copy of the FSA and Science Tillage agreements are attached as **Exhibit "B"** to the Arp Declaration.

## POINT ONE

## The Court Should Approve the Post-Petition Loans

(11 U.S.C. § 364)

Pursuant to 11 U.S.C. § 364(b), "the court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense." Furthermore, pursuant to 11 U.S.C. § 364(c), "If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt . . . (2) secured by a lien on property of the estate that is not otherwise subject to a lien . . ."

In this case, the Debtors seek authority to obtain secured post-petition financing from the FSA, pursuant to § 364(c)(2), because they cannot obtain the required funds (i) in the form of unsecured credit or debt allowable under § 503(b)(1) as an administrative expense, pursuant to § 364(a) or (b) of the Bankruptcy Code, or (ii) on terms more favorable than those offered by the FSA.

The Debtors were able to find only one lender, Science Tillage, who was willing to provide a loan to the Debtors, pursuant to 11 U.S.C. § 364(b), in exchange for an allowed administrative expense claim. No other lenders were willing to make a post-petition loan to the Debtors on similar terms.

The Debtors are not able to receive more favorable terms than those offered by the FSA and Science Tillage. The terms of these agreements have been negotiated at arms' length and in good faith and are in the best interests of the Debtors, their estates, and creditors. Post-petition financing is necessary for the continued operation of the Debtors' estates and the estates' successful reorganization. Furthermore, the creditors of the bankruptcy estate will benefit from the Court's approval of the post-petition lending because the Debtors will be able to plant the new alfalfa crop and continue operations—thus allowing the continued benefit of the use of the land and its crops.

/ / /

/ / /

# POINT TWO

## The Bank's Prepetition Security Interest Does Not Extend to the New Crop

A creditor's prepetition security interest does not cause a lien to attach to a debtor's crops or the proceeds of such crops, pursuant to 11 U.S.C. § 552(a), where the crops are planted *after* the bankruptcy petition has been filed. Moreover, since under section 552(a) new crops are free of a prepetition secured creditor's claim, a debtor who has been granted authority, under 11 U.S.C.A. § 364, for secured borrowing to continue crop production may grant the lender a first priority-position lien in the new crop, despite a prepetition creditor's claim of lien rights.

In *In re Randall*, for example, the bank had a security interest in the debtor's crops and any proceeds from the sale of crops, less the debtor's cost of maintaining, harvesting, and marketing the crops. 58 B.R. 289, 290 (Bankr. C.D. Ill. 1986). However, the bank did not have a security interest in the soy beans and corn planted by the debtor after filing its bankruptcy petition. The bankruptcy court reasoned that other courts applying section 552(a) to farm bankruptcies "have unanimously concluded that . . . a pre-petition security interest does not cause a lien to attach to crops which are not planted until after the filing of the petition." *Id.* (citing In re Hugo, 50 B.R. 963, 967 (Bkrtcy. E.D. Mich. 1985); *In re Sheehan*, 38 B.R. 859, 863 (Bkrtcy. S.D. 1984); *In re Hamilton*, 18 B.R. 868, 871 (Bkrtcy. D. Colo. 1982)).

In another case, *Matter of Beck*, the debtor wanted to plant a different crop, but there was a creditor with a security interest in the current crop. 61 B.R. 671, 674 (Bankr. D. Nebr. 1985). The Court stated that the debtor may abandon the current crop and plant a different one, provided that a motion was filed and permission secured, and that the debtor would likely have to give the creditor a security interest in the new crop equal to the value of the crop currently in the ground. *Id.*

In this case, like the debtor in *Beck*, the Debtors will abandon the current alfalfa crop in the ground and plant a new crop. Before planting the new crop, the Debtors must first prepare the soil by tilling it—thus destroying the old alfalfa crop. If necessary, the Debtors are willing to provide adequate protection to Great Western Bank to protect its security interest in the old crop. The Debtors assert that no adequate protection is necessary, however, because the current alfalfa crop is worthless. In the event the Debtors are required to provide adequate protection, they will do so by granting a second position lien in the new crop—junior to the proposed senior lien of the FSA.

WHEREFORE, the Debtors request that the Court approve this motion to obtain post-petition credit, and for such further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 21st day of January, 2019.

**DAVIS MILES MCGUIRE GARDNER, PLLC**

*/s/ Pernell McGuire*
Pernell W. McGuire
M. Preston Gardner
*Attorney for Debtors*

11

I certify that on January 21, 2019, I electronically filed the foregoing **DEBTORS' MOTION TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364** with the Clerk of the Court for the United States Bankruptcy Court by using the CM/ECF system.

I further certify that parties of record in this case who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.

I further certify that some of the parties of record in this case have not consented to electronic service. I have caused a copy of the foregoing document to be placed in the U.S. Mail, First Class, postage-prepaid to:

    None.

By:   /s/ Pernell W. McGuire
       Pernell W. McGuire

12